IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

Paula A. Gordon
2223 Cherokee Street
Baton Rouge, LA 70806
    *Plaintiff, individually, and on behalf of*
    *Minor grandchild, REP*

Case No. _____

vs.

Hunter V. Greene, Judge
The Family Court, Division D
300 North Boulevard, Suite 4301
Baton Rouge, LA 70801
225.389.4678

Donald T. Johnson, Judge ad hoc
Through: Attorney General Jeff Landry
1885 North Third Street
Baton Rouge, LA 70802
225.326.6079

Prisca A. Zeigler, Assistant District Attorney
Dept. of Children and Family Services ("DCFS")
9048 Airline Hwy.
Baton Rouge, LA 70806
225.389.3414

Karen H. Allain, Court reporter (CDR),
Minute clerk & Deputy Clerk of Court
East Baton Rouge Clerk of Court
222 St. Louis Street
Baton Rouge, LA 70802
225.389.7642

Dennis Stephen Fitzgerald, Esq.
11822 Justice Ave. Suite A-2
Baton Rouge, LA 70816
225.292.6222

Leslie Nelson Parker
5155 Universal Ave.
Greenwell Springs, LA 70739

COMPLAINT & JURY DEMAND

1. January 23, 2020, Plaintiff, Paula A. Gordon ("Grandma"), was imprisoned in retaliation for petitioning for the protection of her granddaughter in The Family Court in and for the Parish of East Baton Rouge. Grandma, individually and on behalf of her only grandchild, seeks to redress the ongoing infliction of physical and economic harm; and ongoing deprivation of their civil rights and liberties granted by the United States Constitution and Louisiana law.

    42 U.S.C. 1983    Civil action for deprivation of rights

        U.S. Const. Amendment I: Right to petition for redress of grievances

        U.S. Const. Amendment VI: Rights of the criminally accused

        U.S. Const. Amendment VIII: Cruel and unusual punishment

        U.S. Const. Amendment XIII: Right to be free from involuntary servitude

        U.S. Const. Amendment XIV: Due process; Equal Protection

    42 U.S.C. 1985    Conspiracy to interfere with civil rights;

        (2) Obstructing justice, intimidating a party or witness

        (3) Depriving persons of rights or privileges

    42 U.S.C. 1986    Action for neglect to prevent

    28 U.S.C. § 241    (criminal) Conspiracy against rights

    Louisiana Civil Code Article 2315.    Liability for acts causing damages

    Louisiana Civil Code Article 2315.6.    Liability for damages caused by injury to another

    Louisiana Civil Code Article 2316.    Negligence, imprudence or want of skill

    Louisiana Revised Statute Title 14 §132.    Injuring public records

2. Defendants conspired to gain unjust enrichment and an unjust legal advantage by obstructing and impeding the due course of justice through fraud, retaliation,

abuse of the legal process, witness intimidation, coercion, intentional infliction of emotional distress, altering the public record, negligent infliction of emotional distress; and neglecting to prevent these wrongs.

Made defendants herein are:

A. Hunter V. Greene, Judge
The Family Court, Division D
300 North Boulevard, Suite 4301
Baton Rouge, LA 70801
225.389.4678

B. Donald T. Johnson, Judge ad hoc
Through: Attorney General Jeff Landry
1885 North Third Street
Baton Rouge, LA 70802
225.326.6079

And personal service via USPS
9th JDC
P.O. Drawer 1431
Alexandria, LA 71309
318.443.6893

C. Prisca A. Zeigler, Assistant District Attorney
Dept. of Children and Family Services ("DCFS")
9048 Airline Hwy.
Baton Rouge, LA 70806
225.389.3414

D. Karen H. Allain, Court reporter (CDR),
Minute clerk & Deputy Clerk of Court
East Baton Rouge Clerk of Court
222 St. Louis Street
Baton Rouge, LA 70802
225.389.7642

E. Dennis S. Fitzgerald, Esq.
11822 Justice Ave., Suite A-2
Baton Rouge, LA 70816
225.292.6222

F. Leslie Nelson Parker
5155 Universal Ave.
Greenwell Springs, LA 70739
225.931.6268

G. Various unknown insurance companies

H. Unknown defendants

3. Jurisdiction for this complaint seeking monetary, declaratory, and injunctive relief to vindicate a retaliatory conspiracy which has interfered with and deprived a child and her grandmother of their civil rights, privileges, and liberty is conferred on this Court pursuant to **28 U.S.C. §§ 1331**, **1343**, **1367**, **2201**, and **2202**.

4. Venue is proper in this Court pursuant to **28 U.S.C. §§ 1391** and **1395**.

## THE NAMED PARTIES

5. Plaintiffs, Paula A. Gordon "Grandma," and her minor granddaughter (REP), are both citizens of the United States of America and residents of the state of Louisiana.

6. Defendant, Hunter V. Greene ("Greene"), was elected to The Family Court bench for Division D in 2014. Earlier that same year and in the same parish, the co-plaintiff child, to whom Judge Greene would later owe a fiduciary duty, was born.

7. Defendant, Donald T. Johnson, served as ad-hoc judge in Division D of The Family Court on January 23, 2020; as Grandma had filed a motion to recuse Greene from the initial proceeding seeking child support for REP.

8. Defendant, Prisca A. Zeigler, on behalf of *State of Louisiana versus Leslie Parker*, filed a Rule to Establish Support pursuant to **LSA-R.S. 46:236** *et. seq.*, **Title IV-D** of the Social Security Act (LASES NO. 2509368-01); set for January 23, 2020.

9. Defendant, Karen H. Allain ("Karen"), official court reporter (CDR); and East Baton Rouge Parish Deputy Clerk of Court; is also the minute clerk in Division D of The Family Court.

10. Defendant, Dennis S. Fitzgerald ("Dennis") is a Louisiana-licensed family court attorney who represents Leslie Nelson Parker in The Family Court in and for the Parish of East Baton Rouge.

11. Defendant, Leslie Nelson Parker ("Les"), is the alleged father of Grandma's granddaughter, REP.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

12. REP was born in 2014. In 2016, her mother ("BLF"), who is Grandma's daughter, requested assistance from DCFS in obtaining child support from Les.

13. November 4, 2016, Les, through his attorney Dennis, filed <u>Petition to Establish Filiation with a Minor Child and Motion to Establish Child Custody</u> ("Petition to Establish Filiation") which was set for court on November 29, 2016 before Greene; but reassigned to December 13, 2016.

14. BLF was served with the suit on November 16, 2016 and became unnerved upon seeing that they were to appear before Greene. Les had long warned BLF if she attempted to have him cast with child support, he would file for custody; he would draw Greene; and Greene would rule in Les' favor no matter what.

15. Once Les' prediction of which judge he would draw materialized, BLF withdrew her request for support enforcement from DCFS; yet BLF and REP continue to be dependent on DCFS for support and services.

16. Twenty-six days after service of process on the <u>Petition to Establish Filiation</u>, Les instructed Dennis to file a <u>Joint Motion for Judgment of Dismissal</u>. Dennis prepared but did not file the motion in the court. The <u>Petition to Establish Filiation</u> simply passed without date. (*See* Exhibits: 1A, 1B, 1C.)

17. November 18, 2018, Les physically attacked Grandma and forcefully removed a terrified REP from Grandma's car where the child had fled during the attack.

4

18. November 19, 2018, with the child now his hostage, Les coerced BLF into filing a <u>Petition for Protection from Domestic Violence</u> against her own mother: F-215,728-C was set for rule on December 5, 2018.

19. November 19, 2018, Les filed <u>Petition for Protection from Stalking or Sexual Assault</u> against Grandma in the Nineteenth Judicial District: C-676,394 – 21/D; set for rule on December 11, 2018. (*See* Exhibit 2.)

20. December 5, 2018, Grandma was awarded custody of REP by Honorable Charlene Charlet Day presiding in Division C of The Family Court, as neither BLF nor Les showed up to be drug screened and defend Grandma's <u>Petition for Custody</u>. The case was consolidated with the earlier suit before Greene and assigned for *Rule Nisi* on January 8, 2019. (*See* Exhibit 3.)

21. December 5, 2018, Dennis called Alexis St. Amant and asked him to withdraw as BLF's attorney so Dennis can represent both BLF and Les. Acting upon Dennis' advice, rather than coming to the custody hearing, BLF withdrew REP from school and took her to Les.

22. December 6, 2018, Les called REP's school, and said that she would not be returning due to a death in the family. There was no death.

23. December 6, 2018, Grandma on behalf of REP, filed a <u>Petition for Protection from Abuse</u> against Les who was unlawfully holding REP after custody was awarded to Grandma the day before. (*See* Exhibit 4.)

24. December 6, 2018, Greene, the duty judge for the day, <u>DENIED</u> all requested protection for the child. (*See* Exhibit 5.)

25. December 7, 2018, the police returned REP to Grandma's custody.

5

## THE CONSPIRACIES AND ABUSES OF THE LEGAL PROCESS

26. <u>To avoid paying child support</u>:  In 2016, Les and Dennis, along with unknown defendants, conspired to intimidate BLF by having Les' <u>Petition to Establish Filiation</u>, along with any action by DCFS for support, assigned to Greene's docket in Division D of The Family Court. This conspiracy and abuse of the legal process was successful.

27. <u>To get Grandma "out of the picture"</u>:  November 2018, Les conspired to use the Office of Domestic Violence to file perjurous petitions for protection against Grandma. This conspiracy and abuse of the legal process backfired when Grandma filed a responsive pleading petitioning for custody of REP, and it was GRANTED.

28. <u>To get Grandma out of the picture attempt #2</u>:  Les, Dennis, and Greene conspired to take custody away from Grandma without having a hearing on the consolidated case from Judge Day; without giving any consideration to parental fitness; and without any fact-finding regarding REP's circumstances.

29. January 8, 2019, from the courtroom gallery, Grandma and BLF observed a bench conference in which Greene suggested that Les wasn't properly before the court and that it was incumbent upon Dennis to file the necessary pleadings so the parties could reconvene for the custody hearing.

30. <u>To get a judgment of paternity without proof thereof</u>:  February 4, 2019, Dennis filed an <u>Amended Petition to Establish Filiation</u> filled with scandalous lies, false accusations and Grandma's good name peppered throughout. This conspiracy was successful. *Rule Nisi* was set for March 12, 2019.

31. Grandma, the party with custody of REP, and certainly a party necessary for any just adjudication of the subject matter, did not know she had no duty to intervene and

pursuant to **La. Code of Civil Procedure art. 641**, it was Dennis' or Greene's duty to join Grandma in the custody matter in Division D.

32. March 12, 2019, Grandma, *pro se,* allied with BLF against Les, filed a <u>Petition to Intervene</u> asking to be granted sole custody of REP until paternity and parental fitness could be ascertained.

33. Greene told Grandma that it was not procedurally proper for the court to hear her; that she had no right to physical custody; and that Greene had, "...no evidence before [him] that these parties are not competent. They brought this child into the world."

34. To cure the problem of there being no evidence that Les was a party to bringing the child into the world, Greene threatened REP's mother, that if BLF did not stipulate to Les' paternity; BLF would be cast with the costs of an expert, DNA test, and all court costs upfront. Greene told BLF he would have a custody ruling that day and,

> *"You might not necessarily like those results. And it might not be even close to what you thought were in the realms of possibility."*

35. Greene, Dennis, and Les threatened, badgered, intimidated and coerced BLF until she gave in and agreed to stipulate that Les was the biological father of REP even though hours earlier BLF swore under oath in open court that it is possible Les is not REP's biological father.

36. Grandma was confused, devastated and mortified at <u>Greene's unlawful behavior</u>. (*See* **28 U.S.C. § 241** Conspiracy against rights.)

37. Grandma immediately sought to enjoin the unlawful, coerced, stipulated contract through supervisory writ from Court of Appeal, First Circuit.

7

38. Upon Grandma's March 15, 2019, <u>Notice of Intent to Seek Supervisory Writ</u>, Dennis pushed the stipulated contract through The Family Court in violation of **District Court Rule 9.5** which requires <u>five working days</u> before presentation to the court; and the **Local Rules** which require <u>an additional fifteen days</u> after the five. The judgment should not have been presented to the court for signing before April 4, 2019.

39. March 18, 2019, Greene signed the <u>Order granting the Return Date for the Writ</u>; and he signed the <u>Stipulated Judgment on Rule</u> rendered in court on March 12, 2019.

40. April 16, 2019, La. App. 1 Cir. *granted the writ in part* and ordered Greene to set a hearing on the <u>Petition to Intervene</u>. Greene willfully defied the order. Grandma has yet to have her day in court; and to this day Greene is derelict in his primary, fiduciary duty to lookout for REP's best interest.

41. June 12, 2019, after three months of waiting for a hearing to be set, Grandma filed an <u>Amended and Supplemental Petition to Intervene Annul Judgment and Restore Custody</u>, now opposing both Les and BLF.

42. <u>To get Grandma out of the picture attempt #3</u>: Dennis threatened Grandma that he would retaliate if she didn't drop her petition. Grandma reported the conduct to Office of Disciplinary Counsel but received a reply that ODC does not investigate "active cases." This conspiracy and abuse of the legal process is now successful.

## CONSTITUTIONAL VIOLATIONS

43. June 28, 2019, four days after Les was served with Grandma's second petition, Dennis advised Les to file a <u>Motion and Rule for Contempt</u> because on March 15, 2019, Grandma refused to acquiesce to a custody judgment that was not final; that

8

she was not a party to; and that arbitrarily and capriciously decreed Les to be "the natural father of the minor child."

44. July 30, 2019, Greene and Dennis conducted a criminal prosecution of Grandma without advising her of her rights to an attorney; right to not testify; right to an impartial judge; right to compel witnesses; and after she objected to the proceeding because she was not a party to the judgment for which she was being tried and convicted for.

45. Greene sentenced Grandma to 60 days in East Baton Rouge Parish Prison unless she paid Les $3,793.55 no later than October 1, 2019. The first compliance review was set for September 3, 2019.

46. August 1, 2019, Grandma filed another <u>Notice of Intent to Seek Supervisory Writ</u>, and <u>Request for Written Reasons for Judgment; Request for Stay of Proceedings</u>.

47. August 23, 2019, La. App. 1 Cir. *granted the writ in part*, and ordered Greene to grant Grandma an appeal pursuant to the August 1, 2019 notice to seek writs.

48. August 26, 2019, Grandma filed a copy of the proposed <u>Judgment on Rule</u> prepared by Dennis on behalf of Les, along with the disposition from La. App. 1 Cir. marked as "Exhibit A."

49. August 27, 2019, rather than grant the appeal as instructed by the Court of Appeal, Greene signed the <u>Judgment on Rule</u>, noting Grandma's OBJECTION; and held back on granting the order of appeal until after the first Compliance Review on September 3, 2019, where he issued the bench warrant for Grandma's arrest. (*See* Exhibit 6, pg. 2.)

50. Grandma avers that Greene, now <u>willfully defying two direct orders</u> from Court of Appeal, First Circuit; had neither personal nor subject matter jurisdiction over

9

Grandma or REP. Greene acted in absence of all jurisdiction when he issued the bench warrant and caused Grandma to serve a sixty-day sentence in East Baton Rouge Parish Prison for nothing more than filing petitions in his courtroom asking that he faithfully fulfill his oath and duty to apply Louisiana law and **protect REP**, and put REP's best interest first and foremost.

## THE REMAINING DEFENDANTS

51. Upon information and belief, Karen H. Allain, altered the minutes of the court record for January 8, 2019.

52. The official court minutes do not match the transcript prepared by Karen of the bench conference held on January 8, 2019.

53. Upon information and belief, Karen altered the minutes of the court record for July 30, 2019.

54. Upon information and belief, Karen backdated the <u>Judgment Review and Rule for Contempt</u> form signed by Grandma late in the evening. The file-stamp shows July 30, 2019 at 12:09 PM. The hearing had not been held at that time.

55. Grandma was told it was routine to backdate such documents.

56. Grandma avers backdating documents violates **La. R.S. 14:132.** *Injuring public records*.

57. **La. Code of Civil Procedure art. 254** *Docket and minute books* in pertinent part:

> **D**. An electronic record of the minutes which is not capable of alteration *without indication that a change has been made* may be maintained in lieu of a written entry. (Emphasis added.)

58. As of December 2019, East Baton Rouge Clerk of Court did not have the software capable of showing when the official court minutes were altered and by whom. (*See* Exhibit 7.)

59. Inaccurate timestamps and the ability to change the date stamp, along with the ability to go back and alter the official court minutes without showing when and by whom, not only erodes the integrity of the entire civil court record, it can have an impact on appeals and other legal processes.

60. Grandma and other victims of the antics of Greene and his staff, take issue with the ethics of the judge's court reporter/minute clerk/deputy clerk of court being the only person allowed to transcribe, and heftily profit from, Greene's adverse rulings.

## THE COURT'S DUTY TO THE CHILD

61. Department of Child and Family Services, Support Enforcement Services was created to protect the public order and interest, and act as advocate and go-between in acrimonious situations where children need support from both parents.

62. Louisiana has extensive guidelines and laws on figuring out and setting a fair amount of support for each child who receives services.

63. Was Prisca Zeigler advocating for the REP on January 23, 2020, in Division D of The Family Court in and for the Parish of East Baton Rouge? (*See* Exhibit 8.)

64. It appears the only person being advocated for in Division D of The Family Court is the alleged father, Leslie Nelson Parker. (*See* Exhibit 9.)

65. Something as important as the initial payment determination of support for a child, who has never received support of any kind in Division D, is assigned to retired ad hoc judge, Donald T. Johnson.

66. Grandma's <u>Motion to Recuse the Judge</u>, already denied by the judge himself was assigned to colleague, Pamela A. Baker, who routinely presides over child support proceedings. (*See* Exhibit 10.)

67. Grandma feels as though she was summoned from prison for a pre-determined proceeding; and hauled into court in shackles and chains in order to shame her; chill her protected First Amendment right to petition for a redress of grievances; and as a warning to BLF to stay quiet and accept whatever she gets. (*See* Exhibit 11.)

68. REP and her mother were abused repeatedly by Les. Just as they had gotten free of him, he orchestrated a scheme to get Grandma out of the picture.

69. Leslie Nelson Parker, his attorney Dennis S. Fitzgerald, and Judge Hunter V. Greene weaponized The Family Court Bench against the most vulnerable class members of society: abused children, their mothers, grandmothers and *pro se* litigants.

70. Judge Pamela A. Baker delivered the final blow to Grandma when she cruelly stated, "You're trying to bastardize your grandchild!"

71. *See* **22 U.S.C. § 7102** Definitions    Human trafficking is the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

72. The term "coercion" includes – the abuse or threatened abuse of the legal process.

73. The term "abuse or threatened abuse of the legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in

any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

74. Everyday Grandma lives with the memory of Les attacking her in front of REP.

75. Les dragging a terrified REP out of Grandma's car.

76. The police coming and not being able to see evidence of the physical attack, they had to leave REP alone with the attacker and his friends.

77. Then there was the attack by Greene; declaring Les, whom Greene knew was likely not the biological father, yet Greene gave this helpless four year old little girl to a violent drug addict who had a score to settle with the child's mother and grandmother.

78. Custody was abruptly changed with no hearing, or best interest analysis, or any consideration of REP whatsoever.

79. Child support had never been set or discussed for this child until just five months before REP turned six years old; and then it was set well below the standard guidelines using figures BLF had never steadily earned in the past.

80. Grandma is shaking and nauseated from reliving this nightmare in trying to prepare this Complaint for Relief once again as a *pro se* litigant.

81. I have not seen nor heard from my daughter or granddaughter since July 7, 2020. They live in fear of Les finding out that Grandma is still "in the picture."

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Paula A. Gordon, individually and on behalf of her minor granddaughter, REP, respectfully requests that this Court enter judgment in Plaintiffs' favor and against all defendants individually and jointly liable for violating Plaintiffs' US

Constitutional rights under Amendments One, Six, Eight, Thirteen and Fourteen; and grant Plaintiffs:

(a) Appropriate declaratory and other injunctive and/or equitable relief:

(b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c) All economic losses on all claims allowed by law;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e) The costs associated with this action, including expert witness fees and legal counsel if necessary, on all claims allowed by law;

(f) Pre- and post-judgment interest at the lawful rate.

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

## JURY DEMAND

PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: January 25, 2021                    Respectfully submitted by:

*[signature: Paula A. Gordon]*

PAULA A. GORDON, Plaintiff, *pro se*
2223 Cherokee Street
Baton Rouge, LA 70806
225.937.0406
cadastralconsulting@iCloud.com