## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**PAULA A. GORDON, individually and on**
**behalf of her minor grandchild, REP**

**CIVIL ACTION NO.**

**VERSUS**

**21-67-JWD-EWD**

**HUNTER V. GREENE, ET AL.**

### RULING AND ORDER

Before the Court is a "Motion for Third Extension of Time to File First Amended Complaint" (the "Fourth Motion for Extension" or "Motion"),[1] filed by Paula Gordon ("Plaintiff"). Through the Motion, Plaintiff seeks what would actually be a fourth extension of time to file an amended complaint. The Motion was filed after Plaintiff's last extension of time expired, and Plaintiff has not established excusable neglect (or good cause) under Fed. R. Civ. Proc. 6(b)(1) for another extension, so the request will be denied. Additionally, even if Plaintiff's request were considered a motion for leave to amend under Fed. R. Civ. Proc. 15, because Plaintiff's proposed Amended Complaint (the "Second Amended Complaint"),[2] which was untimely filed, still fails to state a claim as to any Defendants, amendment would be denied.

I.    **BACKGROUND**

    A.    **General Factual Background**

Plaintiff filed this suit against the Original Defendants[3] on January 25, 2021, opening a second front to the legal dispute involving the paternity and custody of Plaintiff's granddaughter,

---

[1] R. Doc. 46. Although Plaintiff titled this filing a "Motion for Third Extension of Time to File First Amended Complaint," it is the fourth extension to file an amended complaint requested by Plaintiff. *See* R. Docs. 32, 35, 44, 46.
[2] R. Doc. 47
[3] The "Original Defendants" refer to those individuals named as defendants in Plaintiff's original Complaint & Jury Demand (R. Doc. 1), which include the names of Plaintiff's granddaughter, REP, Leslie Parker ("Parker"); Parker's attorney in the state family court, Dennis Fitzgerald ("Fitzgerald"); the judge who primarily presided over the family court proceedings, Judge Hunter Greene ("Judge Greene"); the district court judge who signed the child support order, Judge Donald Johnson ("Judge Johnson"); a child support enforcement lawyer and assistant district attorney, Prisca Zeigler ("Zeigler"); and a court reporter, Karen Allain ("Allain").

REP. This Court, and others, have written before about the facts giving rise to this dispute,[4] which largely relate to proceedings in the Family Court in and for the Parish of East Baton Rouge ("Family Court") concerning the paternity and custody of REP, among other things (collectively, the "Family Court Proceedings").[5] The facts set forth in the Court's prior Reports and Recommendations, Rulings, and Opinions are incorporated by reference and expounded on here only where necessary.[6] In short, Plaintiff alleges that REP's father, Parker;[7] Parker's attorney, Fitzgerald; Judge Greene, the state court judge who primarily presided over the Family Court Proceedings; and others affiliated with those proceedings violated her civil rights and/or conspired to violate her civil rights (the "Conspiracy"). Plaintiff claims the Original Defendants' actions ultimately resulted in her imprisonment for sixty (60) days for civil contempt for violating an Order issued by Judge Greene in the Family Court Proceedings.[8] This Court dismissed Plaintiff's claims against Judge Greene, Judge Johnson, Allain, and Zeigler, with prejudice, on May 10, 2021.[9]

---

[4] *See, e.g.*, R. Docs. 13, 24, 29, 41, 80; *Parker v. Finch*, Nos. 2019-1473/2019-1514, 2021 WL 2251624, at **1-3 (La. App. 1. Cir. 6/3/21), *writ denied*, 324 So.3d 624 (La. 9/27/21) (explaining the relationship between Plaintiff, Parker, Plaintiff's daughter, and REP).

[5] *See* R. Doc. 47, intro. & ¶¶ 3-34, 102-204; *see also* R. Doc. 1, ¶¶ 1-2.

[6] R. Docs. 13, 24, 29, 41, 80.

[7] Although Plaintiff repeatedly takes exception to this Court's references to Parker as REP's father, Plaintiff has submitted a Stipulation between Parker and Plaintiff's daughter, which establishes that Parker is REP's father as a matter of law. R. Doc. 47-5, pp. 65 (Written Stipulation regarding paternity of REP dated March 12, 2018 and signed by Parker and Plaintiff's daughter). *See also* R. Doc. 47-5, pp. 66-67 ("Parker is hereby determined to be the natural father of the minor child, [REP]," based on the Stipulation); R. Doc. 47-2, p. 46, lns. 18-27 (Judge Greene "render[ing] judgment in accordance with the Stipulation"); R. Doc. 47-4, pp. 86-87 (Plaintiff testifying on cross-examination in the Family Court Proceedings that "Parker is listed as the father on the birth certificate," and that she has "refer[red] to [Parker] as the child's father."). Certainly, a determination of paternity, which is part of the relief Plaintiff requests (*see*, R. Doc. 47, p. 48, ¶ l), even if she were entitled to it, would not be appropriate in this Court. *Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077 (5th Cir.1990) ("As a general rule, federal courts refuse to hear suits for divorce and alimony, child custody actions, disputes over visitation rights, suits to establish paternity and to obtain child support, and actions to enforce separation or divorce decrees still subject to state court modification").

[8] *See, e.g.*, R. Doc. 47, intro. & ¶ 223 (alleging Plaintiff was "imprisoned in retaliation" for exercising her "protected First Amendment right to petition her government" and "imprisoned in order to usurp custody of a little girl and gain control over her mother for illicit purposes…"); ¶ 13 (alleging that Judge Greene and the Original Defendants "caused [Plaintiff] to be unlawfully seized and to serve a sixty (60) sentence in East Baton Rouge Parish Prison"); ¶ 150 (alleging that [Allain] sign[ed] the bench warrant causing [Plaintiff] to serve a sixty (60) day sentence"); ¶ 161 (alleging that Parker, Fitzgerald, and Judge Greene "tried and convicted [Plaintiff] of criminal contempt, for violating a judgment issued in the Family Court proceedings that she was not a party to and did not have an opportunity to be heard" (cleaned up).

[9] R. Docs. 17 & 18.

Plaintiff's federal claims against the remaining Original Defendants—Parker and Fitzgerald—were dismissed on March 29, 2022 but Plaintiff was given thirty (30) days to file an amended complaint alleging sufficient facts to establish her claims against Parker and/or Fitzgerald, if possible.[10]

Between the dismissal of Plaintiff's original Complaint and the date of this Ruling, the Conspiracy has grown beyond Parker, Fitzgerald, Judge Greene, and the Family Court Proceedings. According to Plaintiff's Second Amended Complaint, Parker, Fitzgerald, and Judge Greene are participants in a Parish-wide, if not State-wide, conspiracy involving judges in the state trial courts;[11] Judge Walter Lanier ("Judge Lanier"), a judge on the Louisiana First Circuit Court of Appeal; Doug Welborn ("Welborn"), the Clerk of Court for East Baton Rouge Parish; Marketa Walters ("Walters"), the former Secretary of the Louisiana Department of Children and Family Services ("DCFS"), and Jeff Landry ("AG Landry"), the Louisiana Attorney General (Judge Lanier, Welborn, Walters, and AG Landry are collectively the "New Defendants"). Plaintiff claims the New Defendants work in concert to "procure judgments" of "filiation" to and/or "custody" in favor of "men seeking…girls," which, in turn, creates a "highway [used by these] human traffickers to exploit women, children, the courts, and the state by claiming paternity for children they are not related to; gain[ing] possession of those children and control of their mothers; and keep[ing] the courts in business with protective parents (and grandparents) fighting to get those women and children back into their rightful families." Deciphering Plaintiff's allegations as best the Court can, the Conspiracy works as follows: Men like Parker hire "favored attorneys" to file suits seeking "filiation" to and/or "custody" over unrelated "girls." Once filed, these attorneys

---

[10] R. Docs. 29 & 31. The Court also declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any state claims Plaintiff may have against Parker and Fitzgerald.

[11] In addition to Judges Greene and Johnson, Plaintiff also alleges that Judge Pamela Baker in the Family Court freely filiates men to girls without proof of paternity. R. Doc. 47, ¶ 200. Judge Baker is not named as a defendant in the Second Amended Complaint.

work in conjunction with Welborn to "manipulate" the random allotment of cases such that these suits go to judges like Judge Greene, a "known sympathizer," who then issue "judgments which will trigger an appeal [to other complicit judges in other courts] (to generate revenue for their scheme) yet evade review (to delay proceedings and maximize the [favored attorney's] fees and the need for proceedings to be transcribed by [complicit court reporters like Allain])," all while the other court personnel, the Secretary of DCFS, and the Louisiana Attorney General knowingly turn a blind eye.[12]

### B.    Plaintiff's Original Complaint and Dismissal of Same

Against the backdrop of the Family Court Proceedings, Plaintiff asserted the following claims against the Original Defendants in her original Complaint: (1) claims under 28 U.S.C. § 1983 for violations of her rights under the First, Six, Eighth, Thirteenth, and Fourteenth Amendments; (2) claims under 28 U.S.C. § 1985(2) and (3) for a conspiracy to interfere with Plaintiff's civil rights by "obstructing justice, intimidating a party witness," and "depriving persons of rights or privileges"; (3) an "action for neglect to prevent" under 42 U.S.C. § 1986; and (4) a criminal claim for conspiracy against rights under 28 U.S.C. § 241. Plaintiff also asserted a host of state law claims, including claims under La. Civ. Code arts. 2315, 2315.6, 2316, and La. R.S. § 14:132.[13]

Judge Greene and Judge Johnson, Allain, and Zeigler responded to the original Complaint by filing Motions to Dismiss.[14] Because Plaintiff did not oppose these motions within the delays provided by the Local Civil Rules, the motions were deemed unopposed. Because the motions had merit, a Report and Recommendation was issued on April 16, 2021 (the "April 16 R&R"),

---

[12] *Id*. at ¶¶ 35-36 (allegations against Walters); ¶¶ 47-63 (allegations against Welborn); ¶¶ 64-82 (allegations against AG Landry); ¶¶ 83-96 (allegations against Judge Lanier); ¶¶ 150-155, 191-204 (allegations regarding the New Defendants' part in the Conspiracy).

[13] R. Doc. 1.

[14] *See* R. Doc. 5 (Judge Greene and Judge Johnson's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6)); R. Doc. 9 (Allain's Motion to Dismiss); R. Doc. 12 (Zeigler's Motion to Dismiss).

recommending that the Motions to Dismiss be granted dismissing Plaintiff's claims against Judge Greene, Judge Johnson, Allain, and Ziegler with prejudice.[15] Specifically, the April 16 R&R explained that, because Plaintiff's claims arose out of a custody determination, and related state court contempt proceedings, with which results Plaintiff disagreed, the exercise of jurisdiction over these claims should probably be declined pursuant to the *Rooker-Feldman* abstention doctrine and/or the domestic relations exception. Even if the Court exercised subject matter jurisdiction, Plaintiff's claims against Judges Greene and Johnson were barred by absolute judicial immunity as those claims rested solely on acts taken (and not taken) by them during judicial proceedings. Plaintiff's claims against Allain were also barred by judicial immunity as that doctrine extends to clerks for acts taken as required by court order or at the judge's direction, and Plaintiff had no standing to assert a claim against Zeigler related to her role in judicial proceedings (not involving Plaintiff) as a child support enforcement lawyer. Over Plaintiff's objection,[16] the April 16 R&R was adopted as the opinion of the Court, and Plaintiff's claims against Judges Greene and Johnson, Allain, and Zeigler were dismissed with prejudice.[17]

On April 19, 2021, Parker moved to dismiss Plaintiff's claims against him, arguing that Plaintiff had failed to state a claim and, even if she did, those claims were prescribed.[18] Further, Parker argued that all claims purportedly brought on behalf of REP should be dismissed because Plaintiff lacked capacity to file suit on behalf of REP. Plaintiff opposed Parker's Motion to Dismiss.[19] In summary, Plaintiff argued that she had stated a claim against Parker and Fitzgerald because the allegations in the original Complaint sufficiently alleged that they "acted under color of law and conspired with four [now dismissed] state actor[s]"—Judge Greene, Judge Johnson,

---

[15] R. Doc. 13.
[16] R. Doc. 16.
[17] R. Docs. 17, 18.
[18] R. Doc. 14.
[19] R. Doc. 21. Plaintiff incorporated everything stated in her Objection to the April 16 R&R (R. Doc. 16) in her opposition memorandum.

Allain, and Zeigler—to deprive Plaintiff of her constitutional rights by "jailing Plaintiff for nothing more than seeking protection for her grandchild" and "obtaining a judicial determination that Parker is REP's father without any proof or evidence."[20]

As of May 12, 2021, Fitzgerald had not responded to Plaintiff's Original Complaint, despite being served, so Plaintiff moved for a Clerk's Entry of Default,[21] which was entered against Fitzgerald the following day.[22]

On June 20, 2021, Fitzgerald filed a Motion to Deny Entry of Judgment and Motion for Leave of Court to File Responsive Pleadings.[23] Fitzgerald's counsel explained that he was "not aware that [Fitzgerald] had executed and returned to [Plaintiff] a waiver of service form," so he was "wait[ing] for proper service before embarking on his defense of [Fitzgerald]." Fitzgerald's counsel also explained that he is prepared to "contest the claim against his client on the basis of its utter lack of merit"—namely that Fitzgerald is not a "State Actor capable of depriving [Plaintiff] of her Constitutional rights" and, as an attorney who has been adverse to Plaintiff "on every occasion that he was hired to represent someone that she had sued in the State system," he "never owed to [Plaintiff] a duty of any kind" that could give rise to liability. Plaintiff opposed Fitzgerald's motion, complaining that Fitzgerald's counsel "filed motions claiming the blame for his client's own fault, willfulness, and bad faith refusal to accept responsibility for [] Fitzgerald's fraud upon the court; as well as his tortious retaliatory, and harassing actions which have irreparably damaged Plaintiffs."[24] Plaintiff also suggested that setting aside the Clerk's Entry of

---

[20] R. Doc. 27, pp. 1-2.

[21] R. Doc. 19.

[22] R. Doc. 20.

[23] R. Doc. 26.

[24] R. Doc. 28, pp. 1-2. Plaintiff claims the Clerk of the Court may have "balked at the premature amount of damages" … "in the full sum of SEVEN MILLION SEVEN HUNDRED SEVENTY – SEVEN THOUSAND SEVEN HUNDRED AND SEVENTY – SEVEN DOLLARS" in damages from Fitzgerald, in solido ET AL." *Id.*, at p. 1 (emphasis in original).

Default would "certainly prejudice [Plaintiff]; and definitely <u>her unrepresented co-plaintiff</u> <u>granddaughter</u>…"[25]

On March 12, 2022, another Report and Recommendation was issued (the "March 12 R&R"), recommending (1) that Plaintiff's claims against Parker and Fitzgerald be dismissed, without prejudice, for failure to adequately state a claim, and (2) that the Court decline supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims.[26] Specifically, after a lengthy recitation of Plaintiff's allegations about Parker and Fitzgerald, the March 12 R&R explained that Plaintiff could not maintain a claim against Parker and Fitzgerald under § 1983 because they are not State actors and did not issue the contempt order (or make any of the other rulings in the Family Court Proceedings). Similarly, Plaintiff's claims against Parker and Fitzgerald based on a conspiracy with state actors failed because Plaintiff had not alleged the necessary elements of a conspiracy. Notwithstanding heavy use of words such as "conspire," "conspired," and "conspiracy" in the original Complaint, Plaintiff had not pleaded specific, nonconclusory facts that establish an agreement between Parker and Fitzgerald and a State actor to violate her federal civil rights. Plaintiff's §§ 1985 and 1986 conspiracy claims failed for similar reasons. However, it was also recommended that Plaintiff be given leave to amend her Complaint to try to allege facts to establish her claims against Parker and/or Fitzgerald if she believed she could do so considering her Fed. R. Civ. P. 11 obligations.

Plaintiff objected to the March 12 R&R.[27] At the conclusion of the objection, Plaintiff requested that she be able to maintain her civil rights action, that the judges of this Court assigned to the case be recused "to avoid the appearance of impropriety due to bias," that the Court reinstate

---

[25] *Id.* at p. 2 (emphasis in original).
[26] R. Doc. 29.
[27] R. Doc. 30.

her claims against Judges Greene and Johnson, Allain, and Zeigler; and that she be permitted to supplement and/or amend the original Complaint to "cure any deficiencies."[28]

On March 29, 2022, the March 12 R&R was adopted as the opinion of the Court over Plaintiff's objection.[29] All Plaintiff's federal claims against Parker and Fitzgerald were dismissed, and the Court declined supplemental jurisdiction over Plaintiff's state law claims. However, as the March 12 R&R recommended, and as Plaintiff requested, she was given thirty (30) days to file an amended complaint to try to establish her claims against Defendants Parker and/or Fitzgerald. Additionally, the Court ordered that Fitzgerald be permitted to respond to any amended complaint filed by Plaintiff.

### C. Plaintiff's Attempts to Amend the Original Complaint and Requests for Extension of Time

Per the Court's Opinion adopting the March 12 R&R, Plaintiff's amended complaint was due on or before April 29, 2022. On April 6, 2022, Plaintiff filed a Motion for Extension of Time to File an Amended Complaint (the "First Motion for Extension"), requesting an "additional thirty (30) days, up to and including May 30, 2022," to file an amended complaint that "complies with this Court's standards."[30] The "good cause" underlying Plaintiff's request were her *pro se* status and "her disadvantages of lack of legal training, previous difficulty adequately pleading complex legal issues, and this Court's forewarning of the Rule obligations." On April 7, 2022, the Court granted Plaintiff's First Motion for Extension and gave Plaintiff until May 31, 2022 to file an amended complaint "if she believes she can allege sufficient facts to establish her claims against Defendants [] Parker and/or [] Fitzgerald, considering her Fed. R. Civ. P. 11 obligations."[31]

---

[28] *Id.* at p. 13.
[29] R. Doc. 31.
[30] R. Doc. 32.
[31] R. Doc. 33. Notably, Plaintiff was given one more day than she originally requested.

On May 31, 2022, Plaintiff filed two documents: (1) a First Amended and Supplemental Complaint[32] and (2) a Motion for Leave to File Second Amended Complaint.[33] In the First Amended and Supplemental Complaint, Plaintiff "wholly incorporate[d] by reference [her] original Complaint and Jury Demand and corresponding exhibits." Additionally, Plaintiff's factual allegations in the First Amended Complaint are set forth over 27 paragraphs. However, after the 27th paragraph, the First Amended Complaint states:

> Continue numbered paragraphs here..........
>
> **<u>Claims for Relief</u>**
>
> **COUNT ONE:** _____ violates 14[th] amendment....
> (Against defendants .....)
> Continue numbered paragraphs here..........
>
> Plaintiffs incorporate by reference the allegations in paragraphs 1 -
>
> COUNT TWO:
> (Against defendants.....)
>
> Plaintiffs incorporate by reference the allegations in paragraphs 1 -
>
> COUNT THREE:
>
> Continue numbered paragraphs here..........

Thereafter, the First Amended Complaint laid out Plaintiff's specific requests for relief, including the following: a number of declaratory judgments relating to Plaintiff's granddaughter's rights; a "declaratory judgment that Judge Greene's threat and coercion of REP's mother, a witness under oath in his courtroom on 3/12/2019, was 'a severe form of trafficking in persons' as defined by 22 U.S.C. 7102(11)(B)"; a preliminary and permanent injunction "enjoining [D]efendants from enforcing the above-described unconstitutional policies, practices, and customs against the Plaintiff and others similarly situated"; and a judgment compensating Plaintiff for the "damages caused by Defendants' unconstitutional and unlawful conduct."[34]

---

[32] R. Doc. 34. Plaintiff attached three exhibits, totaling 441 pages, comprised of pleadings, transcripts, briefs, and related documents filed in, or otherwise related to, the Family Court Proceedings. *See* R. Docs. 34-1 to 34-3.
[33] R. Doc. 35.
[34] R. Doc. 34, p. 8.

Plaintiff's Motion for Leave to File Second Amended & Supplemental Complaint ("Second Motion for Extension") requested "up to and including June 30, 2022," to file a second amended and supplemental complaint based on Plaintiff's "suggest[ion] that she has fallen woefully short of a comprehensive amended complaint due to the disadvantages of her lack of legal training, difficulty adequately pleading complex legal issues, and the number of constitutional violations needing to be researched in order to adequately plead for a redress of her grievances."[35]

Despite Allain moving to dismiss Plaintiff's First Amended Complaint,[36] and the opposition filed by Judges Greene and Johnson, because they were named again as defendants, although Plaintiff's claims against them had been dismissed with prejudice,[37] the Court granted Plaintiff's Second Motion for Extension and terminated Allain's Motion to Dismiss as moot.[38] Specifically, in its June 14, 2022 Order granting the Second Motion for Extension, the Court struck Plaintiff's First Amended Complaint on its own motion because the pleading continued to name as defendants parties who had been dismissed with prejudice. The Court also explained that Plaintiff was not permitted to reassert claims against persons who had already been dismissed with prejudice from this suit or to file "placeholder" pleadings. Further, the Court noted that Plaintiff was granted leave to amend only as to her claims against Parker and/or Fitzgerald.[39] To that end, Plaintiff was given until July 28, 2022—more days than requested—to file an amended complaint that complied with the Court's Orders. However, the Court advised Plaintiff that this would be her "final opportunity," as she has already been given more than two months to file the First Amended Complaint and the Court had provided her with the benefit of an extensive explanation of the

---

[35] R. Doc. 35.
[36] R. Doc. 36.
[37] R. Doc. 40.
[38] R. Doc. 41.
[39] Because Plaintiff's First Amended Complaint named AG Landry and "unknown defendants" for the first time (R. Doc. 34, p. 1), it was also explained that Plaintiff could add as defendants individuals not previously named but the Order did not pass on the merits of whether such an amendment was proper. *Id.* at p. 4.

problems with her prior Complaint and the elements of her claims to assist her in correcting those deficiencies, if possible.[40]

On June 28, 2022, unhappy with the "limitations placed on the Second Amended and Supplemental Complaint by the Magistrate Judge," Plaintiff requested review from an "Article III judge."[41] Plaintiff objected to numerous issues she perceived with the Court's prior orders and rulings, including, for example, what Plaintiff called "willful misclassification" of "the contempt of court sanction levied against [Plaintiff by Judge Greene]"; the "invidious comments interjected into th[e] record"; Judge Greene's (an "improvidently and interlocutory dismissed Defendant") decreeing that his co-conspirator Parker, "a man with no biological connection to REP," is the "natural father" of REP; and the decision by proposed new Defendant, AG Landry, to "spend Louisiana taxpayers' money to defend rather than investigate the Defendant Judges."[42]

On July 5, 2022, the District Judge affirmed the June 14, 2022 Order, explaining that the Court "[found] no error of fact or law" and "agree[ed] with the assessment of the Magistrate Judge.[43]

On July 28, 2022, Plaintiff filed a "Motion for Second Extension of Time to File an Amended Complaint" (the "Third Motion for Extension"). Per the Third Motion for Extension, Plaintiff requested "an additional five (5) days from July 28, 2022, up to and through August 2, 2022 to file her amended complaint" because a "piece of debris was blown into her eye" on July 22, 2022 and the "[i]rritation developed into inflammation which proceeded to intensify over the next twenty-four to forty-eight hours."[44]

---

[40] R. Doc. 41.
[41] R. Doc. 42. Plaintiff did express her "grateful[ness]" for the permission and time granted to file a Second Amended & Supplemental Complaint."
[42] *Id*.
[43] R. Doc. 43.
[44] R. Doc. 44.

On August 1, 2022, the Court granted Plaintiff's Third Motion for Extension, and Plaintiff was ordered to file her amended complaint on or before August 2, 2022.[45]

Plaintiff did not file an amended complaint on or before August 2, 2022. Rather, on August 5, 2022, Plaintiff filed the Fourth Motion for Extension, requesting that "she be allowed to file [her amended] complaint no later than Monday, August 8, 2022."[46] Plaintiff explained the basis for her request as "motivated by fear of miscalculation of time remaining to prepare a comprehensive stand-alone complaint as required by order of the Court (Doc. 41) and the newly amended Local Form of Pleadings Rule 10(a)(5) effective June 30, 2022." Plaintiff further explained that she requested an extension up to and through August 2, 2022 because she "believ[ed] that the three extra days that are allowed to litigants who are not allowed to file electronically would mean her complaint would be timely if filed no later than Monday, August 8, 2022."

While her Fourth Motion for Extension was pending, on August 8, 2022, Plaintiff filed her Second Amended Complaint without leave of Court and without the consent of the other parties.[47]

### D.    The Second Amended Complaint

Plaintiff's Second Amended Complaint spans 49 pages, contains more than 200 paragraphs of "factual allegations," and includes about 450 pages of exhibits, again, all related in some way to the Family Court Proceedings. Plaintiff purports to assert myriad claims, personally, and on behalf of her granddaughter, REP (and, possibly Plaintiff's daughter), against all Original Defendants (including those previously dismissed with prejudice by this Court), as well as the New Defendants, who are all alleged to play some part in furthering the purported Conspiracy between the Original Defendants. Plaintiff generally alleges that the Original Defendants and New Defendants' "harmful, concerted actions, under color of state law…are depriving Plaintiffs of

---

[45] R. Doc. 45.
[46] R. Doc. 46
[47] R. Doc. 47.

rights guaranteed to them by the United States Constitution through Amendments: One, Four, Five, Six, Eight, Thirteen, and Fourteen.[48]

## II.    LAW AND ANALYSIS

### A.    Plaintiff Has Not Established Excusable Neglect (or Good Cause) Under Fed. R. Civ. P. 6(b), and No Further Extension is Warranted

Under Fed. R. Civ. P. 6(b), district courts have "broad discretion" to extend filing deadlines.[49] Rule 6(b)(1)(A) allows a district court to grant extensions of time prior to the expiration of a deadline for "good cause."[50] "When a deadline has expired, Rule 6(b)(1)(B) allows a court to consider a motion for an extension of time for excusable neglect."[51] "The permissive language of Rule 6(b) shows that any grant of an extension of time for when an act must be done falls to the…court's discretion."[52]

Plaintiff was given the additional extension she requested of August 2, 2022 to file her amended complaint. Plaintiff filed the Fourth Motion for Extension on August 5, 2022 and the Second Amended Complaint on August 8, 2022—both after the expiration of the August 2, 2022 deadline.[53] Accordingly, Plaintiff must establish excusable neglect for the requested extension, "as

---

[48] R. Doc. 47, p. 2. In addition to her federal claims, while there are no specific counts asserting state law claims, Plaintiff may be trying to make such claims, as she alleges that "[v]arious Louisiana state laws including but not limited to **Louisiana Civil Code Articles 2315; 2315.6; 2316; 2320**; and **2324;** as well as the **La Constitution of 1974** afford additional avenues to vindicate the violations being sustained and perpetrated by the Defendants' ongoing, unlawful, intentional actions still causing Plaintiffs' injuries." *Id.* (emphasis in original).

[49] *In re Neurology and Neurophysiology Assocs., P.A.*, 628 Fed.Appx. 248, 251 (5th Cir. 2015), citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995).

[50] *Omega Hospital, LLC v. United Healthcare of Louisiana, Inc.*, 566 F.Supp.3d 543, 547-48 (M.D. La. 2021), citing *Garcia v. LQ Properties, Inc.*, No. 16-1646, 2018 WL 276329, at *2 (N.D. Tex. Jan. 3, 2018) ("Federal Rule of Civil Procedure 6(b) allows a district court to grant extensions of time prior to the expiration of a deadline for "good cause.").

[51] *Garcia*, 2018 WL 276329, at *2.

[52] *McCarty v. Thaler*, 376 Fed.Appx. 442, 443 (5th Cir. 2010) (unpub.), citing *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) (reviewing court's denial of an extension of time under Rule 6(b) for abuse of discretion).

[53] Plaintiff references Fed. R. Civ. Proc. 6(d) in her pleadings, contending that she gets an "additional three days" added to any Court-imposed deadline because she is unable to file electronically. However, Rule 6(d) provides: "When a party may or must act within a specified time after being served *and* service is made under Rule 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to), 3 days are added after the period would otherwise expire under Rule 6(a)." Plaintiff cannot avail herself of the 3 additional days provided by Rule 6(d) because she executed a "Pro Se E-Notice & E-Notice Consent Form," in which she consented to service "by electronic means to the primary e-mail address [she provided] …in lieu of notice by mail…" R. Doc. 2. This means that she received service of the Order granting her until August 2, 2022 to file her amended complaint when the Order was docketed on

to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice."[54] In evaluating "excusable neglect," the Court considers "(1) the possibility of prejudice to the other parties, (2) the length of the applicant's delay and its impact on the proceeding, (3) the reason for the delay and whether it was within the control of the movant, and (4) whether the movant has acted in good faith."[55] But, "[e]ven if good cause and excusable neglect are shown, it nonetheless remains a question of the court's discretion whether to grant any motion to extend time under Rule 6(b)."[56]

To the extent Plaintiff was fearful of miscalculating when her amended complaint needed to be filed, she could have requested in the Third Motion for Extension that she be given until August 8, 2022 to file her amended complaint, but that is not what she did. Rather, Plaintiff chose a path with the potential for misapplication, considering that she requested and received a date certain (August 2, 2022) but alleges that she thought her amended complaint would be filed timely on August 8, 2022.[57] Plaintiff's mistaken belief about the application of Rule 6(d) is not excusable neglect, nor is it good cause. More importantly, in her four Motions for Extension, Plaintiff collectively requested an additional 71 days to file her amended complaint,[58] but she had already received almost 100 additional days through the Court's granting of her First, Second, and Third

---

August 1, 2022. Because the Order was not served on Plaintiff by any means provided under 6(d), Plaintiff is not entitled to an additional 3 days to comply with the Order.

[54] *Paul v. Williams*, No.18-646, 2019 WL 1546947, at *4 (M.D. La. Apr. 9, 2019), *aff'd*, 786 Fed.Appx. 19 *(*5th Cir. 2019), citing *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (citing *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)).

[55] *Id.*, citing *Agee v. City of McKinney, Tex.*, 593 Fed.Appx. 311, 314 (5th Cir. 2014), citing *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012).

[56] *McCarty*, 376 Fed.Appx. at 443-44, citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 894-98 (1990). These factors are addressed, out of order, below.

[57] It is not clear how Plaintiff gets a deadline of August 8, 2022 to file her amended complaint even if she were to receive the benefit of three additional days under Rule 6(d). Adding three additional days to August 2, 2022, a Tuesday, would be Friday, August 5, 2022.

[58] *See* R. Doc. 32 (First Motion for Extension, requesting an additional 30 days); R. Doc. 35 (Second Motion for Extension, requesting an additional 30 days), R. Doc. 44 (Third Motion for Extension, requesting an additional 5 days); R. Doc. 46 (Fourth Motion for Extension, requesting an additional 6 days).

Motions for Extension.[59] For these reasons, the excusable neglect factor relating to the reason for the delay, including whether it was within the reasonable control of movant, weighs heavily against a finding of excusable neglect.

The danger of prejudice to the opposing parties also weighs against a finding of excusable neglect. Here, the only Defendants who have been joined and served are the Original Defendants. Of the six Original Defendants, four of them—Judge Greene, Judge Johnson, Allain, and Zeigler— were dismissed, with prejudice, nearly two years ago. Indeed, three of these four Original Defendants were dismissed because Plaintiff's suit against them is barred by absolute judicial (or quasi-judicial) immunity. Since then, Plaintiff has been warned that she cannot reassert claims against these Defendants. Yet, Plaintiff's Second Amended Complaint attempts to do just that. Further, Plaintiff tries to add several claims against the Original (long dismissed) Defendants, that were not in the original Complaint. The Original Defendants, particularly those who have already been dismissed with prejudice, would be severely prejudiced if Plaintiff's Fourth Motion for Extension was granted and her Second Amended Complaint became the operative pleading in this matter.

The short delay in filing the Second Amended Complaint would probably weigh in favor of finding excusable neglect if length of delay was the only consideration for the second factor. It is not. The Court must also consider the potential impact on the judicial proceedings.[60] As with the prejudice to the parties, this factor weighs against a finding of excusable neglect. Although this case has been pending since January 2021 and the docket contains over 80 entries, this case has not progressed beyond the pleadings stage, in large part due to Plaintiff's failure (and in some ways

---

[59] *See* R. Doc. 33 (granting First Motion for Extension, granting an additional 31 days); R. Doc. 41 (granting Second Motion for Extension, granting an additional 58 days); R. Doc. 45 (granting Third Motion for Extension, granting an additional 5 days).

[60] *Agee*, 593 Fed. Appx. at 314, citing *Salts*, 676 F.3d at 474 ("In evaluating 'excusable neglect,' a court considers "…(2) the length of the applicant's delay *and* its impact on the proceeding…" (emphasis added)).

outright refusal) to comply with the Court's Orders. For example, Plaintiff spends much of the Second Amended Complaint reasserting claims against Defendants who have been dismissed with prejudice, which she has already been told she cannot do, and explaining that this Court's prior rulings are only "interlocutory," so she does not have to comply. Further, Plaintiff has also been advised that she does not have capacity to bring claims on behalf of her granddaughter and that, even if she did, she cannot represent her granddaughter *pro se* because she is not an attorney. Yet, Plaintiff continually tries to assert claims on her granddaughter's behalf, even in the Second Amended Complaint. These actions also call into question whether Plaintiff is acting in good faith, such that the last factor also weighs against a finding of excusable neglect. It is hard to find a party's neglect to timely file excusable when that party takes more time than provided to file a document that patently fails to comply with prior Court orders (after saying she needs additional time to comply).

Although the Court is cognizant of the fact that Plaintiff is proceeding *pro se*, she has not established excusable neglect (or even good cause) for a fourth extension of time to file her amended complaint. Plaintiff was given over three months in extensions (and over four months total) to file the Second Amended Complaint, and she did not file a pleading that was timely or compliant with Court orders. Accordingly, the Fourth Motion for Extension will be denied.

**B.      Regardless, Plaintiff's Proposed Second Amended Complaint Fails to State a Claim Against Parker, Fitzgerald, and the New Defendants She Seeks to Add**

Although denial of Plaintiff's Fourth Motion for Extension results in her Second Amended Complaint not being considered, to the extent the filing of the Second Amended Complaint out of time could be construed as a request for leave to amend under Fed. R. Civ. Proc. 15, leave would be denied as futile. While Plaintiff's protests that she "is not asking the Court to review or reverse the underlying state court judgments which are concomitant to the Defendants' retaliatory actions against Plaintiff ," and that "[i]nvocation of the domestic relations exception would be reversible

error because this lawsuit in no way seeks a divorce, alimony, or child custody decree …,"[61] a review of the claims she has asserted make clear her true intent. In the very next sentence, Plaintiff says the Original Defendants, "private actors in conspiracy with state actors, successfully committed fraud upon the court and had [Plaintiff] imprisoned **in order to usurp custody of a little girl and gain control over her mother for illicit purposes and unjust enrichment by coercion, obstruction of justice, and human trafficking**."[62] Plaintiff continues to name as defendants individuals dismissed with prejudice, continues to try to assert claims on behalf of her granddaughter (and, possibly Plaintiff's daughter), and, despite receiving an extensive explanation of why her claims for violations of her civil rights and conspiracy to violate her civil rights against Parker and Fitzgerald were deficient, still fails to allege sufficient facts (rather than conclusions and speculation) to cure these deficiencies. Plaintiff has had ample opportunity to correct these deficits but has been unable (and/or unwilling) to do so.[63] Relatedly, Plaintiff's claims against the New Defendants are also deficient, as are her attempts to assert claims for violations of criminal statues in a civil case. Put simply, Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted as to any of the Defendants, such that leave to amend out of time is denied.

### 1.    Legal Standard on Futility of Amendment

"It is within the district court's discretion to deny a motion to amend if it is futile," meaning that the "amended complaint would fail to state a claim upon which relief could be granted."[64] To determine whether a complaint fails to state a claim, courts apply the standard used for dismissal

---

[61] R. Doc. 47, p. 3.
[62] *Id.* (emphasis added).
[63] *See Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 37879 (5th Cir. 2014) (affirming district court's denial of plaintiff's motion to amend because "two prior amendments were granted and allowing a third would have been futile" as it still "fail[ed] to state a claim upon which relief may be granted."
[64] *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (citations omitted) (a "district court need not grant a futile motion to amend").

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[65] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[66] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[67] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[68] It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"[69] "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[70]

In evaluating failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[71] The Court "must accept as true all of the factual allegations contained in the Complaint."[72] While factual assertions are presumed to be true, "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Fed. R. Civ. P.12(b)(6) motion.[73]

Although a *pro se* plaintiff is generally given an opportunity to amend her complaint before it is dismissed, leave to amended is not warranted if the plaintiff has already pleaded her "best

---

[65] *Stripling v. Jordan Production Co. LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (citations omitted).
[66] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[67] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[68] *Iqbal,* 556 U.S. at 678.
[69] *Id.* at 679.
[70] *Id.* at 678 (internal quotation marks omitted).
[71] *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011) (citations omitted).
[72] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[73] *Iqbal*, 556 U.S. at 678.

case."[74] "A plaintiff has pleaded her best case after she is 'apprised of the insufficiency' of her complaint" and given a chance to correct it.[75]

> 2.    **Despite Pleading Her "Best Case," Plaintiff's Second Amended Complaint is Futile as It Still Fails to State a Claim Against Defendants**

>> a.    **Plaintiff Cannot Represent REP**

Despite this Court advising Plaintiff that she cannot represent REP *pro se*, Plaintiff continues to attempt to assert claims on REP's behalf. Indeed, Plaintiff's Second Amended Complaint contains about 100 combined uses of "Plaintiffs," "Plaintiffs'," ("REP's"), "custodian," "standing…to seek relief for the injuries to REP," "on behalf of her minor granddaughter REP," or similar terms/phrases, which show Plaintiff's continued efforts to assert claims on behalf of REP *and* to represent her in these proceedings.[76]

According to 28 U.S.C. § 1654, "in all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." "Courts have uniformly interpreted this statute to mean that a person who has not been admitted to the practice of law may not represent anybody other than himself in federal court."[77] While § 1654 guarantees a party the right to

---

[74] *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009), citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam).

[75] *Wiggins v. Louisiana State Univ. – Health Care Services Div.*, 710 Fed. Appx. 625, 627 (5th Cir. 2017) (unpub.), quoting *Dark v. Potter*, 293 Fed. Appx. 254, 257 (5th Cir. 2008) (unpub.) (citing *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985) ("[T]he plaintiffs in this case have been apprised of the insufficiency of their conclusory allegations ... and have been afforded an opportunity to plead facts that would overcome the bar of *Imbler* immunity. We can assume, therefore, that the specific allegations of the amended complaint constitute the plaintiffs' best case ....")).

[76] *See, e.g.,* R. Doc. 47, at p. 1 (caption indicating suit brought by Plaintiff individually and on behalf of REP); p. 47 (request for relief by "Paula A. Gordon, individually and on behalf of her minor granddaughter REP …."); p. 48 (seeking declaratory judgments for rights purportedly belonging to REP); and p. 49 (requesting compensation for "Plaintiffs"). Plaintiff also cannot represent her daughter, REP's mother, who is not, and never has been, a party to these proceedings, to the extent any allegations in the Second Amended Complaint could be considered an attempt to do so. *See, e.g*, Plaintiff's request for a declaratory judgment that Judge Greene's threat and coercion of *REP's mother*, as witness under oath in his courtroom on 3/12/2019, was "a severe form of trafficking in persons" as defined by 22 U.S.C. 7102(11)(B)"). R. Doc. 47, p. 48 (emphasis supplied).

[77] *See, e.g., Walters v. BG Foods, Inc.*, No. 14-96, 2015 WL 1459953, at *4 (E.D. Tex. Mar. 30, 2015) (citations omitted).

proceed *pro se*, it does not provide a layperson the right to represent someone else *pro se*."[78]

Critically, the Fifth Circuit, joining other circuits, recently confirmed that even a "non-attorney

parent or guardian cannot sue pro se on behalf of a minor child."[79]

Leaving aside whether she even has standing to bring claims on behalf of REP in this

case,[80] Plaintiff cannot represent REP. Plaintiff has a right under § 1654 to bring only *her* claims

*pro se*. Accordingly, Plaintiff cannot represent her minor granddaughter, REP, and, as the Fifth

Circuit recognized, "[d]ismissal without prejudice [is] the proper disposition of [REP's] claims."[81]

So, what are *Plaintiff's* claims? She alleges a scheme to "get [her] out of the picture"[82] by

the Original Defendants whom she claims "caused [her] to be unlawfully seized and to serve a

sixty (60) day sentence in the East Baton Rouge Parish Prison, and cause her right of judicial

review to be denied, in retaliation for [her] petitions to the court requesting protection for REP."[83]

She claims Parker threatened that if child support action were taken against him (by Plaintiff's

daughter), he would file for custody of REP; have his case assigned to Judge Greene; and have

Judge Greene rule in his favor" and that Parker did so "with the intent to frighten and intimidate

---

[78] *Id*.

[79] *Dobbs v. Warden*, 2022 WL 4244283 (5th Cir. Sept. 15, 2022) (unpub.).

[80] Plaintiff continues to represent that she has custody of REP pursuant to a December 5, 2018 order by another judge in Family Court. R. Doc. 47, ¶¶ 4, 6, 8, 9, 11, 12. According to the written reasons issued by Judge Greene, Plaintiff's Petition to Establish Custody and Ex Parte Provisional/Temporary Custody, which was the basis for the temporary custody order "was set to be heard on January 8, 2019...at which time [Plaintiff] appeared in court represented by counsel and did not proceed with a hearing as requested in her Petition...[A]ccordingly, her petition was dismissed and the temporary custody order expired by operation of law." R. Doc. 16-1, p. 34; *see also* R. Doc. 1-1, p. 26. Thereafter, Parker filed an Amended Petition to Judicially Establish Filiation with a Minor Child and a Motion to Establish Custody, which was set for hearing on March 12, 2019. R. Doc. 16-1, p. 34. On that date, after some testimony was taken during that hearing, Plaintiff's daughter and Parker entered into a Stipulated Judgment, which recognized Parker as the biological father of REP and provided that the parties would "share custody" of REP with Parker "exercising physical custody of the child every other weekend." *Id.* The Stipulated Judgment was signed by Judge Greene on March 18, 2019. *Id.* Even if she had custody, Plaintiff would not be permitted to represent REP's interests in this case under *Dobbs*.

[81] *Dobbs*, 2022 WL 4244283, at *4.

[82] R. Doc. 47, ¶ 8.

[83] *Id*., at ¶ 13. Any claims implying the invalidity of the order in Family Court holding Plaintiff in contempt would be barred by *Heck v. Humphrey*, 521 U.S. 477, 486-87 (1994), because the contempt judgment has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Lewis v. City of Waxahachie*, 465 Fed.Appx. 383, 385 (5th Cir. 2012) (conviction for contempt which resulted in 180-day prison sentence barred by *Heck*).

REP's mother" so she would withdraw her request for child support assistance from DCFS.[84] Plaintiff does not explain how these threats injured her (rather than her daughter and, possibly REP). Plaintiff makes the conclusory allegation that Parker and Fitzgerald conspired with Judge Greene and obtained a determination of paternity without proof in the form of conclusive DNA testing.[85] According to Plaintiff, the policies and decisions of Judge Lanier, Walters, and AG Landry support and defend a "human trafficking highway" that filiates male predators with little girls who are not their biological children on a much larger scale than just the claims she tries to assert related to REP. Again, it is unclear how this alleged Conspiracy violated *Plaintiff's* federal constitutional rights. Finally, as to Welborn, Plaintiff alleges that his policies resulted in Allain (dismissed with prejudice) committing the criminal act of changing official court records to "cover up" Greene's unlawful rulings.[86]

At bottom, and regardless of her protestations to the contrary, Plaintiff challenges rulings by the Family Court that she views as adverse to her and she challenges a system that she believes improperly established that Parker is her granddaughter's father. Plaintiff has no federal claims against any Defendants under the facts alleged.

> **b.**  **Plaintiff's Claims Against Judge Greene, Judge Johnson, Allain, and Zeigler Were Dismissed With Prejudice and Remain Dismissed**

Plaintiff's claims against Judge Greene, Judge Johnson, Allain, and Zeigler were dismissed with prejudice on May 10, 2021.[87] Since then, Plaintiff has repeatedly attempted to reassert claims against these dismissed parties, and the Court has repeatedly advised her that she cannot do so. Despite this, Plaintiff again names Judge Greene, Judge Johnson, Allain, and Zeigler as defendants

---

[84] *Id*. at ¶¶ 25 & 29.
[85] *Id*. at ¶ 32.
[86] *Id*. at ¶ 61 & 62.
[87] R. Doc. 17, adopting R. Doc. 13.

in the Second Amended Complaint and attempts to assert claims against them.[88] Plaintiff's belief

that she can ignore the Court's ruling dismissing her claims against these Defendants because that

decision was "interlocutory"[89] is incorrect. These parties were dismissed with prejudice because

Plaintiff failed to state a claim against these individuals working in various roles in the state court

system, who are entitled to immunity and/or that Plaintiff could not otherwise state a claim

against.[90] That was a final determination on the merits.[91] Plaintiff's recourse if she disagrees with

that decision is to appeal when there is a complete, final judgment of all claims in this case.

Plaintiff's claims against Judges Greene and Johnson, Allain and Zeigler have been

dismissed with prejudice, and they remain dismissed. As such, Plaintiff cannot state a claim on

which relief may be granted against these Defendants in the Second Amended Complaint.

### c. Plaintiff's Claims against Judge Lanier are Barred by Judicial Immunity

In the Second Amended Complaint, Plaintiff adds claims against Judge Lanier, who is a

judge on the Louisiana First Circuit Court of Appeal. Plaintiff claims that this judge is part of the

---

[88] *See* R. Doc. 47, at pp. 39-45 (Counts One, Two, Three, Five, Six, Seven).

[89] *Id*. at p. 1 ("*State-actor Defendants that were interlocutorily dismissed on 5/10/2021"), p. 6 ("Private actors who conspired with interlocutorily dismissed state actors"), p. 21 ("State actors, co-conspirators (interlocutorily dismissed 5/10/2021 (collectively, 'dismissed conspirators')"). *See also* R. Doc. 75, at ¶ 11 ("Here, the dismissal of the state actors by [the District Judge] was based on the April 16, 2021 (Doc. 13) Magistrate Judge's Report and Recommendation and is interlocutory," meaning that Plaintiff cannot appeal it until it becomes final (after all claims are dismissed.), and at p. 12 (Prayer for Relief, ¶ 4) (requesting the Court "reverse the interlocutory dismissal of Defendants Hunter V. Greene; Donald T. Johnson; Prisca A. Zeigler; and Karen H. Allain"); R. Doc. 78, ¶ 7 ("Plaintiff avers that because the interlocutory dismissal of the state-actor defendants **is not a final judgment**, they are still active defendants." (emphasis in original)).

[90] *Hunter v. Rodriguez*, 73 Fed.Appx. 768, 770 (5th Cir. 2003) (citation omitted) ("a dismissal based on absolute immunity should generally be with prejudice"); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981) (court clerks entitled to absolute immunity for acts required by court order or at the judge's direction). As to Zeigler, a child support enforcement lawyer for the State of Louisiana, who was allegedly involved in the initial payment determination of child support for REP to Plaintiff's daughter, because Plaintiff did not have standing to bring the claims against Zeigler and it was plain she would not be able to cure the standing problem, the dismissal was appropriately with prejudice. *See Rainere v. Microsoft Corporation,* Nos. 15-540/15-2298, 2016 WL 4626584, at *2 (N.D. Tex. Sept. 2, 2016) (dismissal with prejudice is appropriate if the plaintiff is unlikely to cure the standing problem).

[91] R. Doc. 13, p. 6. *See Guarjardo v. JP Morgan Chase Bank, N.A.*, 605 Fed.Appx. 240, 244 (5th Cir. 2015) (fact that court gave the plaintiff leave to amend and the plaintiff included a claim that had previously been dismissed for failure to state a claim in the amended complaint had no effect on the prior dismissal, which generally operates as an adjudication on the merits); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit).

Conspiracy because, as one member of several "3-judge panels" who heard Plaintiff's writs and appeals from actions taken (or not taken) in the Family Court Proceedings, he "signed six (6) out of seven (7) separate decisions all failing to give consideration to [Plaintiff's] pleas for review of the evidence-deficient record after [Judge] Greene's unlawful ruling declaring Parker to be REP's biological father."[92] Plaintiff also alleges that "[Judge] Lanier's words," which "sound as though they were personally written by [Judge] Greene, Fitzgerald, and [Allain]," "joined him to the [C]onspiracy by repeating as if fact, the fraud of the original conspirators."[93] Finally, Plaintiff suggests, "on information and belief," that "Lanier and/or his agents conspired with [Judge] Greene and/or his agents to deprive Plaintiffs of their constitutional right to a review of the family court rulings on appeal."[94] Without any analysis, Plaintiff contends that Judge Lanier is not entitled to judicial immunity because his acts were not judicial in nature. Plaintiff is wrong.

"Judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions."[95] This absolute immunity means that judges are "immun[e] from suit, not just from the ultimate assessment of damages,"[96] and applies to "bar[] both [Plaintiff's] federal and state law claims."[97]

Notably, "[j]udicial immunity can be overcome only by showing that the actions complained of were nonjudicial in nature or by showing that the actions were taken in the complete absence of all jurisdiction."[98] Actions are "judicial in nature if they are normally performed by a judge and the parties affected dealt with the judge in his judicial capacity."[99] Alleging that a judge

---

[92] R. Doc. 47, ¶ 84.
[93] *Id*. at ¶ 87.
[94] *Id*. at ¶ 91.
[95] *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).
[96] *Mireles v. Waco*, 502 U.S. 9, 11 (1991).
[97] *Sharp v. Palmisano*, No. 13-5429, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (judicial immunity bars state law claims under Louisiana law).
[98] *Boyd*, 31 F.3d at 284.
[99] *Id*.

23

acted with "bad faith or malice" does not preclude immunity.[100] It is also well-settled that mere allegations a judge performed judicial acts in furtherance of a conspiracy or because of a bribe, is not sufficient to avoid immunity.[101] "Further, judicial immunity is applicable in cases, such as the instant one where civil rights violations are alleged because the instant claims involve acts and rulings performed by judges in their judicial capacity."[102]

Here, Plaintiff contends that Judge Lanier "joined" the Conspiracy to deprive her of her constitutional rights because he "signed six (6) of seven (7) separate" opinions relating to writs and/or appeals taken by Plaintiff during the Family Court Proceedings. Judge Lanier's actions (or inactions) with respect to these opinions are judicial in nature because they are actions normally performed by appellate court judges, and the parties to those writs/appeals only dealt with Judge Lanier in his judicial capacity. Additionally, as Plaintiff acknowledges, Judge Lanier is a sitting state court appellate judge in the appellate court for East Baton Rouge Parish, where the Family Court sits. She has not shown that any actions he took (in ruling on appeals and writs related to the Family Court Proceedings) were in the complete absence of all jurisdiction. Judge Lanier enjoys judicial immunity under the facts alleged by Plaintiff. As this Court recently explained to another *pro se* litigant:

> While [Plaintiff] disagrees with the court's actions, the law protects judges from being held liable for rulings taken in cases such as this. To the extent that Plaintiff was dissatisfied with the rulings that were made by the judges in those prior cases, her recourse was to seek appellate review of the rulings, not to sue the judges on civil-rights grounds. Independent lawsuits against

---

[100] *Mireles*, 502 U.S. at 11 ("Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."). *See also Swanson v. Higginbotham*, No. 22-209, 2022 WL 18213527, at *4 (M.D. La. Nov. 10, 2022), citing *Mireles*, 502 U.S. at 11.

[101] *Small v. Dallas County, Tex.*, 170 Fed.Appx. 943, 944 (5th Cir. 2006), quoting *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985).

[102] *Stevenson v. Fed. Gov't*, No. 21-633, 2022 WL 4553120, at *2 (M.D. La. Sept. 29, 2022), *citing Stump v. Steward,* 435 U.S. 349, 356 (1978); *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967); *Morrison v. Walker*, 704 Fed.Appx. 369, 372–73 (5th Cir. 2017); *Daniels v. Stovall*, 660 F.Supp. 301, 303 (S.D. Tex. 1987).

presiding judges are not the appropriate vehicle for dissatisfied litigants to obtain a reversal of adverse judgments.[103]

Plaintiff cannot state a federal claim against Judge Lanier because those claims are barred by absolute judicial immunity, like her claims against Judges Greene and Johnson. For this reason, Plaintiff's claims against Judge Lanier are subject to dismissal with prejudice.[104]

> **d. Plaintiff's Second Amended Complaint Fails to State a Claim Under §§ 1983, 1985, and 1986 Because She Has Not Established that Parker and Fitzgerald are State Actors, and She Cannot Establish a Conspiracy**

Again, assuming this Court has subject matter jurisdiction and should exercise it,[105] Plaintiff's amended claims against Parker and Fitzgerald fail for all the reasons explained in the Court's March 12 R&R, which is incorporated here by reference.[106]

The Court previously determined that neither Parker nor Fitzgerald were State actors and dismissed Plaintiff's §§ 1983, 1985, and 1986 claims against them on this basis. Nothing alleged in Plaintiff's Second Amended Complaint changes the determination that Parker and Fitzgerald

---

[103] *Stevenson*, 2022 WL 4553120, at *2, citing *Montesano v. New York*, No. 05-9574, 2006 WL 944285 at *4 (S.D.N.Y. Apr. 12, 2006) ("[n]either damages, injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments."); *see also Brandley v. Keeshan*, 64 F.3d 196, 200–01 (5th Cir. 1995); *Boyd*, 31 F.3d at 284; *Dayse v. Schuldt*, 894 F.2d 170, 172 (5th Cir. 1990); *Wightman v. Jones*, 809 F. Supp. 474 (N.D. Tex. 1992)..

[104] *Hunter*, 73 Fed.Appx. at 770 ("a dismissal based on absolute immunity should generally be with prejudice").

[105] As discussed in the prior R&Rs (R. Doc. 13, 29) recommending dismissal of the other claims in this case, the *Rooker-Feldman* doctrine may apply such that this Court should decline jurisdiction over Plaintiff's collateral attack on a state court judgment; however, it is not clear that all elements of the doctrine are present in this case. For example, *Rooker-Feldman* only applies to final judgments. From the record of the Family Court Proceedings that has been submitted in this Court, there may not yet be a final judgment. *See Parker*, 2021 WL 2251624, at *7 (affirming portions of a judgment issued in the Family Court, reversing others, and remanding case to Family Court "for further proceedings."). Additionally, this Court could decline to exercise whatever jurisdiction it may have, based on the abstention doctrine set out in *Younger v. Harris*, 401 U.S. 37 (1971), which generally permits a federal court to abstain from hearing a case otherwise within its jurisdiction where "there is '(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) …provides an adequate opportunity to raise federal challenges.'" To the extent Plaintiff challenges the civil contempt order, Parker (or Fitzgerald) did not issue the order and as noted above, such a challenge would be *Heck*-barred as there is no indication that any court has called that judgment into question. *See, Parker*, 2021 WL 2251624, at *12-13 (affirming civil contempt order). Plaintiff's claims may also be prescribed as they would be subject to a one-year prescriptive period. The civil contempt order was issued on August 27, 2019, but her original Complaint was not filed until January 25, 2021. Rather than rely on an abstention doctrine or other bases, this Ruling analyzes the merits of Plaintiff's claims asserted in the Second Amended Complaint.

[106] R. Doc. 29 at § II(B).

are not State actors.[107] As the Court previously advised, because they are not State actors, the only

way Plaintiff could maintain her claims against Parker and/or Fitzgerald is if she establishes that

one or both conspired with a State actor (Judge Greene or others) to deprive her of her

constitutional rights. However, the Court also explained that Plaintiff's allegations in the original

Complaint did not adequately allege the elements of a civil rights conspiracy, so those claims also

failed. Importantly, as part of its analysis, the Court explained why Plaintiff failed to state a viable

conspiracy claim *and* what she must allege to do so. Specifically, the Court explained:[108]

> While a plaintiff can maintain a claim under § 1983 that state actors and
> non-state actors conspired to violate her civil rights, Plaintiff has not alleged
> sufficient facts to establish the elements of such a claim. Although
> Plaintiff's Complaint is "peppered" with the words "conspire," "conspired,"
> and "conspiracy,"[109] "[c]onclusory allegations that do not reference specific
> factual allegations tending to show an agreement do not suffice to state a
> civil rights conspiracy claim under § 1983."[110] And while "well-pleaded
> facts [must be accepted] as true and view[ed] in the light most favorable to
> the plaintiff, a complaint 'that offers labels and conclusions' or 'naked
> assertion[s] devoid of further factual enhancement' is not plausible for
> purposes of Rule 12(b)(6)."[111] Nor must this Court accept as true
> "unwarranted factual inferences."[112] As the Fifth Circuit explained, in order
> for Plaintiff "to establish h[er] conspiracy claim, [she] must plead specific,
> nonconclusory facts that establish that there was an agreement among the
> defendants to violate h[er] federal civil rights."[113] Plaintiff has not done that
> here. Other than conclusory references to a "conspiracy" and statements that
> Plaintiff "feels" she was subjected to a conspiracy, Plaintiff's Complaint
> lacks specific factual allegations showing that there was any agreement
> between Parker, Fitzgerald, and/or Judge Greene, much less an agreement
> to commit an illegal act or to deprive Plaintiff of any constitutionally

---

[107] Plaintiff does not make § 1983 a specific count in her Second Amended Complaint, but she does reference it under the Jurisdiction and Venue section. R. Doc. 47, p. 2.

[108] R. Doc. 29, pp. 13-14.

[109] *See, e.g.*, R. Doc. 1, ¶ 2 ("Defendants conspired to gain unjust enrichment and unjust legal advantage…"), ¶ 26 ("To avoid paying child support: In 2016, Les and Dennis, along with unknown defendants, conspired to intimidate BLF by having the [Family Court Proceedings] assigned to [Judge] Greene's docket…This conspiracy…was successful."); ¶ 27 ("To get [Plaintiff] 'out of the picture': November 2018, [Parker] conspired to use the Office of Domestic Violence to file perjurous [sic] petitions…"); ¶ 28 ("To get [Plaintiff] out of the picture attempt #2: [Parker, Fitzgerald, and Judge Greene] conspired to take away custody…"); ¶ 30 (alleging Parker, Fitzgerald, and Judge Greene engaged in a "conspiracy" to "get a judgment of paternity without proof").

[110] *Montgomery v. Walton*, 759 Fed. Appx. 312, 314 (5th Cir. 2019).

[111] *Id.* at 314, citing *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

[112] *Howard v. Dixie Dunavant Ins. Agency*, 227 Fed. Appx. 363, 365 (5th Cir. 2007), quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[113] *Montgomery*, 759 Fed. Appx. at 314.

protected rights.[114] "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co–conspirator or a joint actor with the judge."[115] Without specific factual allegations, Plaintiff cannot maintain a § 1983 conspiracy claim against Parker or Fitzgerald; therefore, it is recommended that those claims be dismissed.[116]

Plaintiff's §§ 1985 and 1986 conspiracy claims failed for similar reasons.

Despite ample guidance from the Court and over four months to prepare and file an amended complaint, Plaintiff's Second Amended Complaint suffers from the same fatal deficiencies—chiefly, the Second Amended Complaint is devoid of plausible, specific, nonconclusory factual allegations that establish an agreement between Parker and Fitzgerald and Judge Greene (or any other State actor), much less an agreement to commit an illegal act or to deprive Plaintiff of any constitutionally protected rights. At bottom, Plaintiff's allegations are based on her perception of the events that occurred during the Family Court Proceedings and/or her perception of her daughter's belief about those proceedings. But Plaintiff's subjective beliefs and feelings, without specific, nonconclusory facts, are not sufficient to state a § 1983 conspiracy claim against private actors.

The heart of Plaintiff's claim of a Conspiracy is that, at some unknown time on some unknown date, Parker allegedly threatened that if child support action was taken against him he would file for custody of REP, have his case assigned to Judge Greene's division, and have Judge

---

[114] *Id.* (conclusory allegations are insufficient to establish a conspiracy where information regarding the time, date or circumstance of an alleged agreement is absent).

[115] *Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (holding that judicial immunity for the alleged state actor in a § 1983 conspiracy claim does not require dismissal of the claims against non-state actors). *See also Howard*, 227 Fed. Appx. at 365 (finding that "[e]ven construing the complaint liberally," plaintiff failed to state a § 1983 conspiracy claims because plaintiff's complaint merely "suggest[ed] dissatisfaction with the state court proceedings," which is insufficient based on the U.S. Supreme Court's statements in *Dennis*).

[116] Although dismissal was recommended, leave to amend was also recommended to give Plaintiff an opportunity to try to state specific facts to support her conspiracy claims, if possible. "Dismissal is not proper 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Howard*, 227 Fed. Appx. at 364, citing *Kaltenbach v. Richards*, 464 F.3d 524, 526 (5th Cir. 2006). Plaintiff was cautioned, however, that, notwithstanding her *pro se* status, she is subject to the requirements of Fed. R. Civ. Proc. 11, which subjects a party to sanctions for asserting a position in a pleading that does not have an adequate legal and/or factual basis.

Greene rule in Parker's favor no matter what the evidence showed.[117] Putting aside the fact that Plaintiff fails to explain how she knows of Parker's alleged threat, more problematic is the fact the Second Amended Complaint lacks any allegations that either Judge Greene (or any other state actor) and Fitzgerald (or any other Defendant) knew of Parker's purported threat, much less that they confected a specific agreement to violate Plaintiff's constitutional rights at Parker's behest in furtherance of the Conspiracy.[118] Notably, in one of Plaintiff's state court filings, attached to the Second Amendment Complaint, Plaintiff states that "[w]hether it is truth or coincidence, Plaintiff's daughter **believes** that Parker has a connection to Judge Greene, and no matter what the evidence Judge Greene will rule in his favor."[119] Conclusory statements and Plaintiff's subjective belief (or the subjective beliefs of her daughter, who is not even a party to this suit) that the Defendants are part of a Conspiracy "do not state a constitutional claim, unless the plaintiff supports [such] allegations with material fact."[120] Because Plaintiff only offers conclusory statements and subject beliefs about the Conspiracy, unsupported by specific factual allegations tending to show an agreement, she fails to state a civil rights conspiracy claim against Parker and/or Fitzgerald.[121]

---

[117] R. Doc. 47, ¶ 25. In her original Complaint, Plaintiff claims this information was conveyed by Parker to Plaintiff's daughter. R. Doc. 1, ¶ 14.

[118] In fact, even if these allegations were true, they would not demonstrate an agreement between Parker and/or Fitzgerald with a State actor to violate *Plaintiff's* constitutional rights since REP is not Plaintiff's child and Plaintiff does not allege that she was awarded temporary custody of REP until December 2018, after the alleged conspiratorial assignment of Parker's custody petition to Judge Greene. *See* R. Doc. 47, ¶¶ 27, 29, 111.

[119] *See* R. Doc. 47-5, p. 96, ¶ 33.

[120] *See, e.g.*, *McLemore v. Walmart Inc. LLC Texas Stores*, No. 18-689, 2020 WL 949206, at *4 (E.D. Tex. Jan. 31, 2020); *Shelton v. Fox*, No. 07-462, 2009 WL 152502, at *3 (E.D. Tex. Jan. 21, 2009) ("In this case, plaintiff only offers his subjective belief that the defendants conspired against him. Because plaintiff fails to support his conclusory allegations of conspiracy with any material facts, the conspiracy claim should be dismissed.").

[121] It is not clear against whom Plaintiff intends to assert her claims under 42 U.S.C. §§ 1985, 1986, and 1988. Plaintiff's claims under §§ 1985 and 1986 fail for the reasons explained in the March 12 R&R. R. Doc. 29, pp. 14-14. She has not alleged that any person, acted with any race or class-based animus toward her. In other words, she has not stated what protected class she falls into that resulted in a violation of her rights. Likewise, the Second Amended Complaint lacks any allegation that Defendants have interfered with the federal court system. For these reasons, Plaintiff has failed to state a conspiracy claim under § 1985(2) or (3). Because a valid § 1985 claim is a prerequisite to a § 1986 claim, Plaintiff's claims under § 1986 also fail. Since she has not stated claims under §§ 1983, 1985 or 1986, Plaintiff would also not be entitled to a discretionary prevailing party fee award under § 1988.

> **e.** **Similarly, Plaintiff's Proposed Amended Complaint Fails to State a Claim, Including a Civil Rights Conspiracy Claim, Against Walters and/or Welborn**

Plaintiff's Second Amended Complaint also fails to state a claim against Walters and/or Welborn. First, similarly to her claims against Parker and Fitzgerald, the Second Amended Complaint lacks any specific factual allegations to show that Walters and/or Welborn entered into any agreement among themselves or with Parker/Fitzgerald to deprive Plaintiff of her constitutional rights. Nor has Plaintiff alleged that *she* (rather than REP or Plaintiff's daughter) suffered any harm because of the actions or inactions of Walters.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[122] Liability of a supervisor must be predicated on personal involvement in the violation or the supervisor's implementation of a policy that is so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the violation.[123]

Plaintiff complains that Walters' policies and practices as head of DCFS "paved the highway for human traffickers to exploit women, children, the courts, and the state by claiming paternity for children they are not related to; gain possession of those children and control of their mothers; and keep the courts in business with protective parents (and grandparents) fighting to get those women and children back into their rightful families."[124] Plaintiff specifically claims that Walters' actions have harmed REP and REP's mother (not Plaintiff).[125] There is no allegation that

---

[122] *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

[123] *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987).

[124] R. Doc. 47, ¶ 43.

[125] *Id.* at ¶ 44 ("By choosing and approving polies and procedures only favorable to Parker and the state's federal financial incentives, Walters has harmed REP."); ¶ 45 ("Walters' failure to scrutinize the loosely regulated hospital-based paternity acknowledgement programs, and her deliberate indifference to the danger they are creating for La. women and their children has injured REP by causing her mother to be targeted by a predatory, self-serving man seeking easy money with little effort and no accountability."); and ¶ 46 ("As a direct and proximate result of Secretary Walters' actions, or omissions, policies, practices and customs, REP was denied the rights to due process of law and to equal protection of the law afforded to her by the state and federal constitutions.").

Walters conspired with anyone. Additionally, Plaintiff does not allege that any act or omission by Walters caused Plaintiff harm.

As to Welborn, Plaintiff does not allege that he was personally involved in the alleged constitutional violations. Instead she claims that he had supervisory responsibility for Allain, whom Plaintiff believes falsified a public record, and that "Welborn's indifference to the fact that employees can and do make changes to the official electronic court minutes, and that no changes are reflected as mandated by law, has allowed [Allain] to freely change the record as needed to cover for [Judge] Greene's unlawful rulings.[126] She further alleges that Welborn's failure to establish adequate policies, procedures, or regulations to ensure sufficient training and supervision of employees with respect to the Clerks responsibility to maintain the integrity of the official court record in order to prevent the violations of constitutional rights, and his deliberate indifference to those needs, were direct and proximate causes of the injuries, and the losses of Plaintiffs' rights."[127] There is no allegation that Welborn conspired with anyone. Additionally, any claims that Welborn is responsible for Allain's actions also fail. Welborn cannot be held vicariously liable for Allain's actions since the claims against Allain were dismissed with prejudice based on Allain's absolute quasi-judicial immunity[128] and there is no § 1983 claim for supervisory liability. Finally, Plaintiff's claims against Welborn based on his alleged "failure to establish adequate policies, procedures or

---

[126] *Id.* ¶ 61.

[127] *Id.* ¶ 63.

[128] *LaFrance v. New Orleans City*, No. 16-14439, 2017 WL 1050495, at *3-4 (E.D. La. Mar. 17, 2017) (explaining (1) that "consistent with [a] functional approach," which looks at the "nature of the function performed, not the identity or title of the actor who performed it," "courts often hold that other judicial employees, such as clerks of court, law clerks, and others, enjoy absolute quasi-judicial immunity when performing a ministerial function at the direction of the judge…In other words, judicial employees are absolutely immune when they act, whether in bad faith or with malice pursuant to a court order or a judge's instructions because the employee is act[ing] as the arm of the judge and comes within his absolutely immunity," and (2) that the "judicial directive that cloaks court employees with absolute immunity may be formal and official, such as a court order, or more informal, such as verbal communication from a judge." (internal quotations and citations omitted)). *See also Evans v. Suter*, 260 Fed.Appx. 726, 727 (5th Cir. 2007) ("Clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks integral to the judicial process."); *Kirkendall v. Grambling & Mounce, Inc.*, 4 F.3d 989, 1993 WL 360732, at *3 (5th Cir. 1993) (unpub.) (explaining that as a derivative of absolute judicial immunity, "[o]ther necessary participants in the judicial process are entitled to absolute quasi-judicial immunity." (internal quotations and citations omitted)).

regulations" relating to "maintaining the integrity of the official court record" fail because Plaintiff has not adequately alleged specific facts to support a pattern of abuses to constitute an actionable custom or practice.[129]

Accordingly, Plaintiff's Second Amended Complaint fails to state a federal claim against Walters and/or Welborn, and those claims are subject to dismissal.[130]

### f.   Plaintiff Has No Private Right of Action to Assert Criminal Claims Against Any Defendant

In addition to her conspiracy allegations, Plaintiff also alleges that the "Defendants committed crimes against Plaintiffs," including (1) "Gender Motivated Crimes [Under] Title 34…;"(2) "Human Trafficking [Under] Title 18;" (3) "falsifying the public record"—*i.e.*,

---

[129] Because Plaintiff has not identified a specific "policy statement, ordinance, regulation, or decision" that was "officially adopted and promulgated" by Welborn, Plaintiff appears to be attempting to establish liability under *Monell*, 436 U.S. 658 (1978), based on alleged customs and practices of Welborn, as the head of the Clerk's Office. *See Jordan v. Gautreaux*, 593 F.Supp.3d 330, 353 (M.D. La. 2022), citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.), *on reh'g*, 739 F.2d 993 (5th Cir. 1984). To make this showing, Plaintiff must allege that there was a pattern, which is "tantamount to official policy when it is so common and well-settled so as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 850 (5th Cir. 2009), quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). And to establish a pattern, a plaintiff must show "sufficiently numerous prior incidents" pointing to the "specific violation in question"—*i.e.*, with "similarity and specificity"—rather than for "any and all 'bad' or unwise acts." *Peterson,* at 850-51 (internal quotations and citation omitted). Indeed, a "plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Id.* Here, regarding Welborn, Plaintiff alleges (1) that he is a "policy-maker" responsible for (a) for "hiring, training, [and] supervising employees, such as Allain, and (b) for "maintain[ing] the integrity of the official court record" as required by the "mandates of the La. Code of Civil Procedure"; (2) that Welborn "allows" and/or is "indifferen[t]" to the fact that his employees can "make undocumented at-will changes to the official record of the civil court"; and (3) that Welborn has "fail[ed] to establish adequate policies, procedures or regulations to ensure sufficient training and supervision of employees with respect to the Clerk's responsibility to maintain the integrity of the official court record in order to prevent violations of constitutional rights." R. Doc. 47, ¶¶ 54-55, 61-63. These allegations fall well short of establishing a custom or practice of Welborn or the Clerk's Office that "transcends" the errors—two purportedly altered minute entries—in this case that could plausibly be the moving force behind any alleged violation of Plaintiff's constitutional rights. For this reasons, Plaintiff's claim for *Monell* liability against Welborn fails.

[130] Plaintiff also references several state laws that she believes Welborn violated. *See* R. Doc. 47, ¶¶ 48 (claiming Clerk of Court is statutorily liable for any damage or loss caused by failure to perform his duties or the fault of his deputy clerks under La. R.S. 13:750(A); 51 (Clerk of Court is responsible for docket and minute books under La. C.C.P. art. 254); 53 (Clerk of Court is responsible for the performance and nonperformance of his employees' official duties under La. C.C.P. art. 255; 52 (court record not to be altered without indication that change was made under La. C.C.P. art. 254(D)). To state a claim for a civil rights violation, a plaintiff must show the violation of the Constitution or of a federal law—violations of state law are not sufficient. *See, e.g., Mantei v. City of San Antonio*, No. 15-1007, 2015 WL 13807317 (W.D. Tex. Dec. 3, 2015), citing *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005).

violations of the Louisiana Public Records Act ("PRA"), La. R.S. 44:1, *et seq.*; (4) "malfeasance in office;" and (5) "obstruction of justice."[131]

Plaintiff alleges that part the Conspiracy was devoted to the commission of crimes against her (and REP and, possibly Plaintiff's daughter), primarily by Parker, Fitzgerald, Judge Greene, and Allain but also the other Defendants. For example, as to AG Landry, Plaintiff claims, in sum, "Landry has caused Plaintiffs' injuries through his failure to take the allegations of human trafficking seriously, and his refusal to investigate the policies and practices ongoing in [Family Court], Divisions D and A, including the army of attorneys exclusively practicing family law who scout for particular clients to supply the court with a steady stream of vulnerable often unrepresented women and children, easy-pickings for the likes of [Judge] Greene, Fitzgerald and [Allain]".[132] Plaintiff also claims REP and Plaintiff's daughter are victims of human trafficking and that Parker, Fitzgerald, Judge Greene, Walters, and AG Landry (and all Defendants) are responsible.[133] She also says that she is the victim of unspecified "gender motivated crimes" under Title 34.[134] Further, Plaintiff claims that Welborn is responsible under a theory of supervisory liability for Allain's alleged state crime of manipulating or altering the minutes of the Family Court Proceedings—*i.e.*, public records.[135]

A plaintiff does not generally have a private cause of action under a federal criminal

---

[131] R. Doc. 47, at introduction, ¶¶ 59 (alleging Allain committed the crime of falsifying a public record), 240 (alleging gender motivated crimes), 241 (alleging human trafficking), 246 (stating that 42 U.S.C. § 1988 provides this court with the power to "hold a trial for the crimes committed by Defendants against Plaintiff, and to inflict punishment on those found guilty"), and p. 49, request for relief (r) (requesting a "criminal investigation and trial on the crimes against Plaintiffs").

[132] *Id.* ¶ 82.

[133] R. Doc. 47, ¶¶ 3 (alleging defendants had Plaintiff imprisoned to "usurp custody of a little girl and gain control over her mother for illicit purposes…and human trafficking"), 33 & 34 (alleging Parker initiated conspiracy perpetrating "a severe form of human trafficking through coercion"); 43 (alleging that Walters' policies have "paved the highway for human traffickers"); 81 (alleging that Landry has injured Plaintiffs by failing to take allegations of human trafficking seriously), and 241 (Count Thirteen alleging human trafficking against all Defendants).

[134] *Id.* at ¶ 240.

[135] *Id.* at ¶ 59. Any claim against Welborn for Allain's actions is also subject to dismissal for the reasons explained in section II(B)(2)(e), above.

statute.[136] A statute establishing a federal crime is subject to prosecution by the presiding office of

the United States Attorney,[137] but does not provide a private, civil cause of action for Plaintiff to

pursue the claims she has asserted in this proceeding.[138] As noted above, state criminal violations

would not establish a federal constitutional violation.[139] Accordingly, Plaintiff cannot maintain her

federal claims against the Defendants for violations of federal or state criminal statutes.

### C. Supplemental Jurisdiction Should Not Be Exercised Over Plaintiff's Claims

The Court previously declined to exercise supplemental jurisdiction over Plaintiff's

potential state law claims.[140] Because Plaintiff's Second Amended Complaint fails to state any

federal law claims against Defendants and those claims are subject to dismissal, the Court should

again decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over any potential state

law claims for the same reasons.

### III. CONCLUSION

Plaintiff failed to timely file an amended complaint as ordered, and she has not established

excusable neglect (or good cause) under Fed. R. Civ. P. 6 for her failure to do so. Additionally,

review of Plaintiff's untimely, proposed amended complaint shows that, despite being told of the

deficiencies of her prior pleadings (and being given time to cure them), she has failed to cure (or

---

[136] *Gill v. State of Texas*, 153 Fed. Appx. 261, 262-63 (5th Cir. 2005) ("[D]ecisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, and, as a private citizen, Gill has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute…Therefore, the district court did not abuse its discretion when it dismissed these claims as legally frivolous.") (citations omitted).

[137] To the extent Plaintiff believes that a federal crime has occurred, Plaintiff may report that crime to the Office of the United States Attorney for the Middle District. Likewise, to the extent Plaintiff believes a state crime has occurred, Plaintiff may report that crime to a local or state law enforcement agency.

[138] *See, e.g.*, *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("As we recently have emphasized, 'the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.' *Cannon v. University of Chicago*, *supra*, 441 U.S., at 688, 99 S.Ct., at 1953."); *Blaney v. Ovard*, No. 11-223, 2011 WL 766606, at *1 (N.D. Tex. Feb. 8, 2011) ("Not only has plaintiff failed to adequately plead a violation of any state or federal criminal statute, but he cannot maintain a private right of action as a result of any such violation.").

[139] *See*, n. 129, *supra*.

[140] R. Doc. 29, at § II(C).

even attempt to cure) those deficiencies or to state a claim against any Defendant. For these reasons,

IT IS ORDERED that the Fourth Motion for Extension,[141] filed by Plaintiff Paula Gordon, is DENIED. Plaintiff has failed to establish excusable neglect (or good cause) for her failure to seek the extension timely.

IT IS FURTHER ORDERED that, to the extent Plaintiff seeks leave to file her Second Amended Complaint,[142] leave is DENIED. Plaintiff fails to state a federal claim against any Defendant, such that amendment is futile.

Signed in Baton Rouge, Louisiana, on March 29, 2023.

ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE

---

[141] R. Doc. 46.
[142] R. Doc. 47.

34